### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **BURTON MCGUIRE d/b/a NICE GUYS TV MOUNTINGS,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) Case No. 2:18-CV-1596-KOB ) |
| **IHANGTVS.COM, LLC and FERLANDO PARKER,** | ) ) ) |
| **Defendants.** | ) |

### **MEMORANDUM OPINION**

This matter comes before the court on Defendants Ihangtvs.com, LLC and Ferlando Parker's motion to dismiss. (Doc. 16). Plaintiff Burton McGuire d/b/a Nice Guys TV Mountings filed the instant action against Defendants on September 28, 2018, alleging violations of the Anti-Cybersquatting Protection Act, § 43 of the Lanham Act. (Doc. 1 at ¶¶ 16–26). The complaint also alleged violations of Alabama's Trademark Act and Alabama tort law. (Doc. 1 at ¶¶ 27–38). All parties reside in Alabama, so Plaintiff asserts federal question jurisdiction under the federal Lanham Act. (Doc. at ¶ 4).

In their motion to dismiss and brief in support, Defendants argue that Plaintiff insufficiently pled all the elements of a violation of the Anti-Cybersquatting Protection Act and moves this court to dismiss Counts I and II pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 17 at 4–12). Defendants also move this court to dismiss Plaintiff's common law tort claim for failure to state a claim and to dismiss all claims against Defendant Ferlando Parker as insufficiently alleging wrongdoing against him as an individual. (Doc. 17 at 12–15).

For the reasons stated below, the court will GRANT Defendant's motion to dismiss Plaintiff's ACPA claim as insufficiently pled. But the court will also GRANT Plaintiff leave to amend its complaint to address the deficiencies this Memorandum Opinion identifies. Because the court's subject matter jurisdiction in this case relies on Plaintiff's ACPA claim, the court declines to consider any of Defendants' alternative arguments for dismissal until it receives Plaintiff's amended complaint on the jurisdictionally dispositive cause of action.

## I. FACTUAL BACKGROUND

Plaintiff Nice Guys TV Mountings began operation as a television and home theater installation service in late 2015. It began using the trade name "Nice Guys TV Mounting" in December 2015; registered that trade name with the Alabama Secretary of State on January 4, 2016; and purchased the domain name *www.niceguystvmountings.com* sometime in early 2016. Since then, Nice Guys has used that domain name as the company's website for the purposes of advertising its services to potential customers. (Doc. 1 at ¶ 7). Nice Guys alleges it has incorporated its name in all of its "other marketing and business promotional materials" and that the trade name "has developed a distinctive and widespread recognition in the marketplace." (Doc. 1 at ¶ 8).

Although the complaint does not specify the timing, Nice Guy alleges that after it launched its business and website "[m]ore than one customer informed Nice Guys that when they typed in a URL containing the phrase 'niceguystvmounting,' they were directed to ihangtvs.com or www.wehangtvs.com, a competitor's website". (Doc. 1 at ¶ 10).

The website *www.wehangtvs.com* allegedly belongs to Defendants Ihangtvs.com, LLC, Nice Guys' direct competitor, and Ferlando Parker, Ihangtvs.com's president and owner. Nice Guys alleges that, "just months" after Nice Guys began operations and launched its website,

Defendants registered domain names similar to plaintiff's domain names: *www.niceguystvmounting.com*, *www.niceguytvmountings.com*, and *www.niceguytvmounting.com*. (Doc. 1 at ¶ 11).

Nice Guys allegedly contacted Defendants to request that they forfeit ownership of the three domain names, but Defendants refused. Nice Guys alleges that after contacting Defendants to request they forfeit the domain names, Defendants re-registered the three domain names in July 2018, with full knowledge that Nice Guys had registered the trade name and trademark with the Alabama Secretary of State.

Nice Guys subsequently filed this lawsuit and moved for a preliminary injunction. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of her entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## III. DISCUSSION

To state a claim under the ACPA, a plaintiff must properly allege (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit. *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006). Defendants' motion to dismiss argues that Plaintiff's complaint insufficiently alleges the first and third elements—fame or distinctiveness and Defendants' bad faith intent to profit, respectively. Defendants' reply brief appears to argue that Plaintiff's complaint also insufficiently alleges the second element—identical or confusingly similar domain names. This Memorandum Opinion will address each element in turn.

*A. Fame or Distinctiveness*

To be protectable under the ACPA, a plaintiff must show that its mark is either distinctive *or* famous. 15 U.S.C. § 1125(d)(1)(A)(ii)(I)–(II). As an initial matter, Plaintiff all but concedes that the mark "Nice Guys TV Mountings" is not "famous" under United States trademark law. While its complaint makes two conclusory allegations of fame, (doc. 1 at ¶¶ 9, 28), its response to Defendants' motion does not argue that the mark at issue is famous. Moreover, "the general rule is that only very well-known and strong marks" will be famous for ACPA purposes, so Plaintiff's conclusory allegations of fame fall short. *See* 4 McCarthy on Trademarks and Unfair Competition § 24:104 (4th ed. 2016).

But Plaintiff's complaint does allege, and its response to Defendant's motion to dismiss does argue for its mark's distinctiveness. Under United States trademark law, protectable marks fall into one of four categories: suggestive, fanciful, arbitrary, or descriptive. *Jysk*, 810 F.3d at 778. Plaintiff does not contend that its mark is suggestive, fanciful, or arbitrary, instead arguing only that the mark is descriptive.

"A descriptive term merely identifies a characteristic or quality of a service." *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investacorp) E.C.*, 931 F.2d 1519, 1523 (11th Cir. 1991). To be distinctive and thus protectable, merely descriptive marks must acquire "secondary meaning." *Jysk*, 810 F.3d at 778 (11th Cir. 2015). "Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service." *Investacorp*, 931 F.2d at 1525.

Eleventh Circuit courts analyze the following factors to determine if a descriptive mark has acquired secondary meaning:

> (1) the length and manner of the mark's use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a

conscious connection in the public's mind between the name and the plaintiff's business; and (4) the extent to which the public actually identifies the name with the plaintiff's service.

*Investacorp*, 931 F.2d at 1525. "Whether the public actually identifies the name with plaintiff is the most telling factor when determining whether a mark has acquired secondary meaning." *Id.*

Although not binding, the Eleventh Circuit's unpublished opinion in *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608 (11th Cir. 2014), offers this court helpful guidance in how to apply these factors at the dismissal stage. In *Tropic Ocean*, the Eleventh Circuit affirmed a district court's dismissal of an ACPA claim for failing to establish that the mark "Tropic Ocean Airways" had acquired secondary meaning. *Id.*, at 611. Although the plaintiff in *Tropic Ocean* had alleged continuous promotion "through substantial advertising and marketing and sales" for one year prior to the alleged infringement, as well as use of the mark on its website, the court concluded that the plaintiff "failed to allege the nature and extent of advertising and promotion or its efforts to promote a conscious connection in the public's mind." *Id.*, at 612.

Plaintiff makes similarly bare and conclusory allegations in its complaint. Plaintiff alleges it began using the trade name "Nice Guys TV Mountings" in December 2015 and registered that trade name with the Alabama Secretary of State in January 2016. Plaintiff also purchased the domain name *www.niceguystvmountings.com* in early 2016 and has used that website to advertise its services to potential customers since then. Finally, Plaintiff alleges it "incorporated [the mark] in all of its marketing and business promotional materials." (Doc. 1 at ¶¶ 6–9).

But, like the plaintiff in *Tropic Ocean*, Nice Guys' complaint does not contain any additional details about "the nature and extent" of those marketing and business promotional materials, nor its "efforts to promote a conscious connection in the public's mind." Plaintiff

attempts to distinguish between its complaint and the one dismissed in *Tropic Ocean* by pointing to its allegation that "more than one customer" alerted Nice Guys that slightly mistyped domain names were redirecting traffic to a competitor's website. (Doc. 26 at 7–8). While this allegation *could* help Nice Guys show that the public actually identifies the mark with the plaintiff's service, the allegation's lack of specificity regarding the extent and frequency of public confusion belies Plaintiff's argument that its allegations can overcome the same pleading deficiencies identified in *Tropic Ocean*.

So the court will GRANT Defendants' motion to dismiss Plaintiff's ACPA claim for failing to plausibly allege that the mark at issue is distinctive and thus protectable under the ACPA.

But in its response to Defendants' motion, Plaintiff included a footnote asking this court to grant it leave to amend its complaint with additional factual allegations regarding secondary meaning in the event the court found the original complaint's allegations lacking. (Doc. 26 at 7 n. 1). Because the footnote includes examples of factual allegations that could help the amended complaint adequately plead secondary meaning and survive dismissal, the court concludes that granting Plaintiff leave to amend its complaint to cure the original's deficiencies could prove fruitful.

But doing so would be futile if any of Defendants' alternative grounds for dismissing Plaintiff's ACPA claim have merit. So before dismissing Plaintiff's claims with specific leave to amend its complaint, the court must first address Defendants' alternative arguments for dismissal.

*B. Identical or confusingly similar*

Defendants argue that in addition to failing to allege its mark's distinctiveness, Plaintiff has also failed to allege that Defendants' registered domain names are identical or confusingly similar to Plaintiff's mark. Specifically, Defendants argue that "because Plaintiff's mark is descriptive and generic, registration of the at-issue domain is not confusingly similar." (Doc. 28 at 6).

Defendants do not cite any authority for the proposition that, at the dismissal stage, courts should not consider otherwise infringing conduct confusingly similar when the mark is "descriptive and generic," although trademark law generally provides less protection to weaker trademarks. *Cf. Exxon Corp. v. Tex. Motor Exch.*, 628 F.2d 500, 504 (5th Cir. 1980) ("The strength of a trademark is important in determining the scope of protection that is granted.").

On the face of the domain names Defendants registered, the court disagrees that they are "not confusingly similar." Each of the domain names at issue contain Plaintiff's registered trade name, adding or removing one "s" in each. The Eleventh Circuit affirmed granting a preliminary injunction in a case featuring similarly confusing domain names. *Jysk*, 810 F.3d at 778 (11th Cir. 2015). In *Jysk*, the defendant registered *bydesignfurniture.org*, *bydesignfurnitures.com*, and *bydesign-furnitures.com*, and the owner of the mark *bydesignfurniture.com* filed suit under the ACPA. The court noted that "there is no serious dispute that [the domain names at issue] are identical or at least confusingly similar." *Id.*

Here, Defendants allegedly registered three domain names that simply add or subtract an "s" from "guys" or "mountings"—the exact alteration of one of the infringing domain names in *Jysk*. The three allegedly-infringing domain names strike this court as precisely the types of "confusingly similar" domain names that can satisfy the second element of the ACPA. So the

court concludes that Plaintiff's original complaint sufficiently alleges the second element of its ACPA claim—that Defendants registered identical or confusingly similar domain names.

*C. Bad faith intent to profit*

Defendants also argue that Plaintiff has failed to allege that Defendants registered the similar domain names with a bad faith intent to profit. The ACPA provides that in determining whether a person had a bad faith intent to profit, a court may consider the following:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX).

Plaintiff's complaint contains factual allegations such that, if true, support weighing these factors in favor of finding a bad faith intent to profit. Plaintiff also provided additional

allegations in its motion for a preliminary injunction that would implicate factor seven, which is that the defendant used false contact information to register the domain name. (Doc. 6-1).

On Defendants' motion to dismiss, the court does not have to determine whether Defendants had a bad faith intent to profit but only if Plaintiff has alleged facts sufficient to establish a *plausible* bad faith intent to profit. The court concludes that Plaintiff alleged facts sufficient, if proven, to trigger consideration of seven of the nine enumerated but non-exclusive factors used to determine bad faith. The court especially notes just how strongly Nice Guys' complaint alleges the fifth factor of a defendant's diverting consumers away from the plaintiff's website. So Plaintiff's complaint sufficiently establishes the third element of its ACPA claim—that Defendants registered the allegedly infringing domain names with a bad faith intent to profit.

## IV. CONCLUSION

Having determined that Plaintiff's complaint fails to sufficiently allege an ACPA claim *only* because of its failure to sufficiently allege that Plaintiff's mark had acquired distinctiveness, the court concludes that allowing Plaintiff a second chance to plead secondary meaning will not be futile. So for the reasons stated above, this court will GRANT Defendants' motion to dismiss Plaintiff's claim arising under the ACPA but will GRANT Plaintiff 14 days to amend its complaint with factual allegations sufficient to state a claim upon which relief can be granted.

**DONE** and **ORDERED** this 15th day of April, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE